

**U.S. Department of Justice**

*Laura E. Duffy*
*United States Attorney*
*Southern District of California*

| | |
|---|---|
| *Caroline P. Han* | *(619) 546-6968* |
| *Assistant United States Attorney* | *Fax (619) 546-0831* |

*San Diego County Office*      *Imperial County Office*
*Federal Office Building*      *321 South Waterman Avenue*
*880 Front Street, Room 6293*      *Room 204*
*San Diego, California 92101-8893*      *El Centro, California 92243-2215*

April 26, 2012

Molly Dwyer, Clerk
U.S. Court of Appeals, Ninth Circuit
95 Seventh Street      Re: <u>United States v. Chovan</u>, 11-50107
San Francisco, CA 94103-1526      (Pregerson, Hawkins, Bea)

Dear Ms. Dwyer:

The Government submits this brief in response to the panel's April 12, 2012, order seeking briefing on the applicability of <u>United States v. Brailey</u>, 408 F.3d 609 (9th Cir. 2005) to this case.

## ARGUMENT

### THE COURT SHOULD FOLLOW <u>BRAILEY</u>'S BINDING PRECEDENT, AND FIND THAT APPELLANT CHOVAN WAS PROPERLY SUBJECT TO § 922(g)(9)

In short, <u>Brailey</u> sets forth binding precedent. <u>Hart v. Massanari</u>, 266 F.3d 1155, 1170 (9th Cir. 2001) ("If a court must decide an issue governed by a prior opinion that constitutes binding authority, the later court is bound to reach the same result, even if it considers the rule unwise or incorrect.") In <u>Brailey</u>, the panel held that because the defendant never lost his civil rights as a result of his conviction for a misdemeanor crime of domestic violence, he never had any civil rights restored and did not fall within the group of people exempt from prosecution under 18 U.S.C. § 922(g)(9) because they fall within the exception set forth in 18 U.S.C.

§ 921(a)(33)(B)(ii)[1]. 408 F.3d at 612. Similarly, Appellant Chovan did not lose any civil rights as a consequence of his conviction for a misdemeanor violation of Cal. Penal Code § 273.5, did not have his civil rights restored, and is properly subject to prosecution under § 922(g)(9).

Prior to January 1, 2012, Cal. Penal Code § 12021(c)(1) precluded a defendant who has been convicted of a misdemeanor violation of § 273.5 from owning, purchasing, receiving, or possessing a firearm for a ten year period after the conviction. Cal. Penal Code § 12021(c)(1)[2]. Chovan lost the right to possess a firearm under state law, but he did not lose the rights to hold office, vote, or serve on a jury. As of August 15, 2006, Chovan was no longer precluded by California State law from possessing a firearm. As a result, Chovan has argued that he had his civil rights restored, within the meaning of § 921(a)(33)(B)(ii), because the single civil right he lost was restored as of that date. [Oral argument at 2:27.]

---

[1] 18 U.S.C. § 921(a)(33)(B)(ii) states:

A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person . . . has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or received firearms.

18 U.S.C. § 921 (a)(33)(B)(ii).

[2] As of January 1, 2012, Cal. Penal Code § 12021(c)(1) was repealed and reenacted as Cal. Penal Code § 29805. Cal. Penal Code § 29805.

However, courts have repeatedly found that the civil rights contemplated by § 921(a)(33)(B)(ii) and (a)(20), a companion statute, are the right to vote, to serve on a jury, and to hold public office. See, e.g., Logan v. United States, 552 U.S. 23, 28 (2007); Caron v. United States, 524 U.S. 308, 316 (1998); United States v. Valerio, 441 F.3d 837, 843 (9th Cir. 2006); Brailey, 408 F.3d at 611-12; United States v. Andaverde, 64 F.3d 1305, 1309 (9th Cir. 1995); United States v. Dahms, 938 F.2d 131, 133 (9th Cir. 1991).

Based on Circuit precedent on the group of civil rights considered in determining if a person falls within the § 921(a)(33)(B)(ii) exception, Chovan never lost any of his civil rights. As a result, he is in the exact same position as the defendant in Brailey. While the defendant in Brailey regained his right to possess firearms under Utah state law because of a change in the law, and Chovan regained that right after the statutory ten year period, both regained that right by operation of law. Brailey, 409 F.3d at 611. Neither defendant lost the right to vote, serve on a jury, or hold public office, and instead, they both retained those rights. Id. at 611-12. "When a defendant's civil rights were never taken away, it is impossible for those civil rights to have been restored." Id. at 612. (internal quotation omitted) (citation omitted). Thus, Chovan, like Brailey, cannot benefit from the § 921(a)(33)(B)(ii) exception that would provide them a safe harbor from prosecution if their civil rights had been restored. Id.

While, as described above, there are factual differences between the circumstances of the defendant in Brailey and Chovan's case, the panel's holding in

Brailey is binding precedent. Hart, 266 F.3d at 1172. In Hart, a panel of this Court found:

> [A] court confronted with apparently controlling authority must parse the precedent in light of facts presented and the rule announced. Insofar as there may be factual differences between the current case and the earlier one, the court must determine whether those differences are material to the application of the rule or allow the precedent to be distinguished on a principled basis.

Id. Because the factual differences between Chovan's case and that of the Brailey defendant are so similar so as to not be distinguishable, this Court should find that Brailey is binding precedent.

Chovan has previously argued that in light of the District of Columbia v. Heller, decision, in which the right to bear arms was found to be a fundamental right, the Court should consider the right to possess a firearm as a civil right as well. 554 U.S. 570, 594-96, 634-37 (2008). While the right to possess firearms was described as a civil right in Valerio, that court also specifically noted that the right to possess firearms was not included in the group of civil rights considered by other courts when analyzing if a defendant's civil rights were restored. 441 F.3d at 842-43 ("All the cases we have found from other circuits use the same three civil rights as the test of whether civil rights have been restored for the federal felon in possession crime."); see also United States v. Skoien, 614 F.3d 638, 644-45 (7th Cir. 2010). As a result, there is no basis in relevant case law for including the right to possess firearms in the group of civil rights contemplated by § 921(a)(33)(B)(ii).

While Chovan may argue that <u>Heller</u> constitutes higher intervening authority, <u>Heller</u> did not "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." <u>Miller v. Gammie</u>, 335 F.3d 889, 900 (9th Cir. 2003). First, § 921(a)(33)(B)(ii) was enacted in 1996 prior to the <u>Heller</u> decision, and Congress could not have contemplated that the term "civil rights" included the right to possess firearms. Second, and most importantly, the <u>Heller</u> decision made no mention of the right to possess firearms as a "civil right" to be restored within the meaning of § 921(a)(33)(B)(ii) and (a)(20). Instead, the Supreme Court noted that its holding had limitations, and that the Court did not contemplate that the decision would bring a sea of change to gun legislation, stating:

> [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

<u>Heller</u>, 554 U.S. at 625-28. The <u>Heller</u> decision does not dictate a finding other than the one reached by the <u>Brailey</u> panel.

Additionally, while Chovan did suffer a firearms disability, it was lifted after the ten year period had elapsed pursuant to Cal. Penal Code § 12021(c)(1), something that occurs in many states. <u>Logan</u>, 552 U.S. at 32-33 (citing Louisiana statute which allows for felons' firearms disabilities to be lifted after ten years if no further felony convictions intervene) (internal citation omitted). The completion of the ten year period for Chovan's firearm disability is also not equivalent to the restoration of civil rights process contemplated by Congress when it enacted § 921(a)(33)(B)(ii).

Congress contemplated that when a defendant had his civil rights restored, that it would be a process and not just a temporary disability that was later lifted. As noted by the Brailey panel:

> [I]t is reasonable for persons who have benefitted from a state procedure to determine their fitness to exercise civil rights to be permitted to bear arms under federal law. Congress reasonably [could have concluded] that misdemeanants who had been through a state's restoration process and had regained their civil rights were more fit to own firearms than misdemeanants who had not lost their own civil rights, had not had their convictions expunged, or had not been pardoned.

Brailey, 408 F.3d at 613. (internal quotation omitted) (citation omitted)

Were the Court to find that the right to possess firearms is within the group of civil rights contemplated by § 921(a)(33)(B)(ii), and that Chovan's right to possess firearms was restored, the inquiry does not end there. This is because the statutory language contemplates more than one civil right. The restoration of that right alone is not enough to meet the "restoration of civil rights" requirement of § 921(a)(33)(B)(ii). For example, in Valerio, the defendant's right to vote and possess a firearm were restored by operation of law and yet, the panel found that to be insufficient to fall within § 921(a)(20) where the defendant had not regained the rights to hold office or to serve on a jury. Valerio, 441 F.3d at 843; see also United States v. Meeks, 987 F.2d 575, 578 (9th Cir. 1993) (defendant who had regained the right to vote and hold office, but not the right to serve on a jury, had not restored his civil rights); Enos v. Holder, No. 2:10-CV-2911 JAM-EFB, 2012 WL 662454 at *6 (E.D. Cal. Feb. 28, 2012) (citing United States v. Keeney, 241 F.3d 1040, 1044 (8th Cir. 2001) ("Significantly 921(a)(20) and 921(a)(33)(B)(ii) both refer

to civil rights in the plural, thus suggesting that Congress intended to include a cluster of rights, as referenced in McGrath within the meaning of the term "civil rights" as contained in these provisions") (citations omitted).

## CONCLUSION

Based on the discussion above, Chovan does not fall within the group of people who Congress contemplated would be free from prosecution when it enacted § 921(a)(33)(B)(ii). Additionally, in that the factual differences between Brailey and Chovan's case are immaterial, this Court should follow Brailey's binding precedent and find that Chovan's civil rights were retained, and not restored. He was therefore properly subject to § 922(g)(9).

Dated: April 26, 2012.

Respectfully submitted,

LAURA E. DUFFY
United States Attorney

BRUCE R. CASTETTER
Assistant United States Attorney
Chief, Appellate Section
Criminal Division

s/ Caroline P. Han

CAROLINE P. HAN
Assistant U.S. Attorney